# IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

17 C 01165-3
17 C 01165-3

Ashleigh Forte, Individually and as Aministrator

of the Estate of Denise Gertrude Forte

CIVIL ACTION
NUMBER:_____

**PLAINTIFF**

**VS.**

Corizon Health, Inc., et al., Corizon, LLC, Sheriff Butch Conway

Colonel Don Pinkard, Dr. Muhammad Hashmi, Nurse Rebecca

McGee, Nurse Sanam Safi, Nurse Kimberly Shivers

**DEFENDANT**

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Mark Begnaud
Horsley Begnaud LLC
750 Hammond Drive, Bldg 12, Ste 300
Atlanta Ga 30328

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **1st** day of **March**_____, 20**17**.

Richard T. Alexander, Jr.,
Clerk of State Court

By _____
Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

2017 MAR -1 PM 4: 13

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

ALEXANDER, CLERK

| | |
|---|---|
| ASLEIGH FORTE, individually and as ADMINISTRATOR OF THE ESTATE OF DENISE GERTRUDE FORTE | 17 C 01165-3 **7 C 01165-3** |
| Plaintiff, | Civil Action File No._____ |
| v. | Jury Trial Demand |
| CORIZON HEALTH, INC., a Delaware Corporation, CORIZON, LLC, a Missouri limited liability company, SHERIFF BUTCH CONWAY in his individual and official capacities, COLONEL DON PINKARD in his individual and official capacities, DR. MUHAMMAD HASHMI in his individual and official capacities, NURSE REBECCA MCGEE in her individual capacity, NURSE SANAM SAFI in her individual capacity, and NURSE KIMBERLY SHIVERS in her individual capacity, | |
| Defendants. | |

-1-

## COMPLAINT

Denise Gertrude Forte, then a 52-year-old black woman, was booked into the Gwinnett County Detention Center in January of 2014. Ms. Forte had some pre-existing medical issues, including chronic obstructive pulmonary disease (COPD), a chronic inflammatory lung disease that causes obstructed airflow from the lungs and, when untreated, is a leading cause of death in America. Ms. Forte suffered off-and-on from a chronic cough and chronic bronchitis while she was in custody, and she eventually developed pneumonia by February of 2015. Despite Ms. Forte's repeated complaints, however, the medical department failed to diagnose her pneumonia.

Ms. Forte's pneumonia worsened toward the end of February, and she was found shivering in her cell with a bad cough and pain "all over" on Saturday, February 28, 2015. Ms. Forte was taken to medical where she was given only cold medicine and told that she would see a doctor in two days. Ms. Forte was not examined by a doctor at that time, and the nurse who saw her, Defendant Kimberly Shivers, failed to diagnose her pneumonia or provide treatment for Ms. Forte's pneumonia.

The next morning, Ms. Forte requested to be taken back to medical. Ms. Forte reported chest pain along with her bad cough, shivering and body

-2-

pain. Nurse Rebecca McGee, defendant here, refused Ms. Forte's request to
be seen in medical. Nurse McGee decided that, since Ms. Forte had been to
medical the day before, and since Ms. Forte would be seeing the doctor the
following day, there would be no reason to see her in medical on that day,
despite her complaints of bad cough and chest pain. In making this
determination, Nurse McGee was following the directives of the jail's private
medical provider, Corizon, which dictated that an inmate complaining of cold
symptoms is to be given a "cold protocol" (antihistamines and expectorants)
and nothing more.

Ms. Forte was found dead in her cell less than three hours after Nurse
McGee refused her medical request. An autopsy revealed pneumonia as the
cause of death. Ms. Forte died because Defendants were negligent and
deliberately indifferent to her serious medical needs. Defendants ignored Ms.
Forte's right to medical care in furtherance of a policy that minimized
expenses and maximized profits for Corizon, the jail's private medical
provider. Defendants followed this for-profit motive at the expense of the lives
of individuals like Ms. Forte who were captive, unable to seek independent
medical treatment.

-3-

This is an action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution as well as the Georgia Constitution and Georgia law against the individuals and entities responsible for Ms. Forte's tragic and avoidable death.

### Parties, Jurisdiction, and Venue

1. Plaintiff Ashleigh Forte, Denise Gertrude Forte's daughter, has been appointed Administrator of the Estate of Denise Gertrude Forte's and as such Ashleigh Forte is a proper party to prosecute estate claims.

2. Plaintiff Ashleigh Forte, individually, is a natural person and citizen of the United States of America, residing in Florida, and is of full age. Plaintiff Ashleigh Forte is Denise Gertrude Forte's daughter and as such holds statutory rights under O.C.G.A. § 51-4-2 to pursue a wrongful death action regarding Denise Gertrude Forte's death.

3. Defendants Corizon Health, Inc. and Corizon, LLC—together, the "Corizon Defendants"—are Delaware and Missouri entities, respectively. Corizon Defendants contracted with Gwinnett County and/or the Gwinnett County Sheriff to provide physical and mental health care, screening, assessment, treatment, and attention to those inmates detained at the Gwinnett County Detention Center ("GCDC").

-4-

4. Sheriff Butch Conway is the Sheriff of Gwinnett County, sued in his individual and official capacities, and may be served at the Gwinnett County Sheriff's Office, 2900 University Pkwy. NE, Lawrenceville, GA 30043.

5. Defendant Colonel Don Pinkard, sued in his individual and official capacities, is an individual who was, at all times relevant to the allegations in this complaint, an employee of the Gwinnett County Sheriff's Office, acting under color of law.

6. Defendant Dr. Muhammad Hashmi ("Dr. Hashmi"), sued in his individual and official capacities, is an individual who was, at all times relevant to the allegations in this complaint, an employee of the Gwinnett County Sheriff's Office, acting under color of law.

7. Defendant Nurse Rebecca McGee ("Nurse McGee"), sued in her individual capacity, is an individual who was, at all times relevant to the allegations in this complaint, an employee of the Gwinnett County Sheriff's Office, acting under color of law.

8. Defendant Nurse Sanam Saffi, sued in her individual capacity, is an individual who was, at all times relevant to the allegations in this

-5-

complaint, an employee of the Gwinnett County Sheriff's Office, acting under color of law.

9. Defendant Nurse Kimberly Shivers, sued in her individual sued in her individual capacity, is an individual who was, at all times relevant to the allegations in this complaint, an employee of the Gwinnett County Sheriff's Office, acting under color of law.

10. This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourteenth Amendment to the United States Constitution, as well as the Georgia Constitution and Georgia law.

11. All of the parties herein are subject to the personal jurisdiction of this Court.

12. Defendants are joint and several tortfeasors.

13. Venue is proper pursuant to Article VI, Section II, Paragraph IV of the Georgia Constitution because Plaintiff's injuries occurred in Gwinnett County, and because at least one Defendant resides in Gwinnett County (e.g. Sheriff Butch Conway, Colonel Don Pinkard, and Dr. Muhammad Hashmi in their official capacities).

## Facts

### Brief Background: Denise Forte's Incarceration and Medical History

14.   Ms. Denise Gertrude Forte, hereinafter "Ms. Forte,"[1] was incarcerated at the Gwinnett County Detention Center ("the Jail") from approximately January 20, 2014, until her death on March 1, 2015.

15.   Ms. Forte was 52 years old when she entered the Jail.

16.   Ms. Forte was screened by the medical department at the Jail upon admission and reported taking prescribed medication for bronchitis.

17.   Then, on a chronic care visit on January 30, 2014, ten days after her admission, Ms. Forte reported a history of chronic bronchitis for 20 years as well as a previous diagnosis for Chronic Obstructive Pulmonary Disease (COPD).

18.   Ms. Forte was diagnosed by the medical department at the Jail with, among other diagnoses, COPD.

19.   Ms. Forte suffered from a few prolonged bouts of heavy cough during her incarceration.

20.   In September of 2014, for example, Ms. Forte suffered from a severe cough and was seen in the medical department at the Jail.

---

[1] Decedent, Ms. Denise Gertrude Forte, will be referred to throughout the Complaint as "Ms. Forte." Ms. Forte's daughter and next of kin, Ashleigh Forte, will be referred to as "Plaintiff" or "Ms. Forte's daughter."

21.   The last of these bouts of severe cough began in late October of 2014 and lasted until Ms. Forte's death on March 1, 2015.

## Severe Cough, Development of Pneumonia, and Death

22.   Ms. Forte repeatedly reported her severe cough and discharge of thick mucus to jail personnel from late October or early November of 2014 until her death.

23.   Open Records requests reveal the following documented interactions between November 2014 and January 2015, though it is likely there were more interactions not captured in the documents produced by the jail:

   a. Ms. Forte submitted a medical request form on October 28, 2014, reporting, "I have developed a chronic cough again ...."

   b. Ms. Forte was seen by Nurse Godard in medical on November 3, 2014.  The nurse's notes report "cough; congested" for one week.

   c. On November 11, 2014, Ms. Forte submitted a sick call request reporting, "I still have a bad cough and still have hip pain."

   d. On November 15, 2014, Ms. Forte submitted a sick call request reporting "I still have a chronic cough – thick gray mucus."

-8-

e. On November 20, 2014, Ms. Forte submitted a sick call reporting, "I was supposed to see [doctor] today for pain cold and cough – but I was not added."

f. Ms. Forte saw Dr. Hashmi on November 24, 2014, for pain and cough. Ms. Forte was prescribed cold medicine.

g. On November 30, 2014, Ms. Forte submitted a sick call request reporting, "I still have a bad cough – bringing up thick dry stuff."

h. Ms. Forte was seen again by Nurse Godard in medical on December 1, 2014 for her bad cough. The nurse's notes report that Ms. Forte was "coughing up thick gray mucus … [which] hasn't stopped since 2 [months] ago."

i. On December 8, 2014, Ms. Forte reported via medical request, "I was supposed to have been seen for my chronic cough – never been seen – but charged for it!"

j. On December 13, 1014, Ms. Forte reported via medical request that she still had the cough.

k. Ms. Forte saw the nurse practitioner on December 22 for her cough and other unrelated symptoms.

-9-

    l. On January 6, 2015, Ms. Forte submitted a sick call again reporting her cough along with some newly-developed unrelated symptoms.

    m. On January 19, 2015, Ms. Forte again submitted a sick call request reporting her cough.

    n. Ms. Forte was seen by Dr. Hashmi on January 21, 2015, and was again prescribed a "cold protocol."

24.    Ms. Forte's daughter, Plaintiff here, spoke with Ms. Forte very regularly – almost daily – during this timeframe. Ms. Forte's daughter was therefore well aware of Ms. Forte's severe cough in the months before Ms. Forte's death.

25.    In the last two weeks before Ms. Forte's death – the last two weeks of February 2015 – Ms. Forte's cough became even more severe. Ms. Forte's daughter reports that Ms. Forte could not get through a sentence or two on the phone before lapsing into a 30-second coughing fit.

26.    Ms. Forte also reported to her daughter in late February that she was suffering from night sweats. Ms. Forte regularly woke up in the morning in a pool of sweat.

27.   Ms. Forte reported these worsening symptoms – the worsening cough and the night sweats – to all jail medical personnel she saw.

28.   Ms. Forte eventually developed pneumonia.

29.   The medical department failed to diagnose Ms. Forte's pneumonia.

30.   Since Ms. Forte's autopsy shows the cause of death was lobar pneumonia, Ms. Forte had developed pneumonia by February of 2015, and perhaps earlier.

31.   On Saturday, February 28, 2015, Ms. Forte missed breakfast, which was not normal for her according to the deputy who was on duty at the time. The deputy checked on Ms. Forte and found her in her cell "shivering" and reporting that she "hurt all over."  Ms. Forte was so visibly ill that the deputy insisted she be sent to medical.

32.   Ms. Forte was seen by Nurse Shivers, a defendant here, on February 28, 2015.  Ms. Forte had a fever in addition to her shivering and overall body pain, and she was still suffering from night sweats and a severe cough.

33.   Ms. Forte's examination revealed that Ms. Forte also had tachycardia (resting heart rate 108).

34.   Nurse Shivers put Ms. Forte on a "cold protocol" (Tylenol, CTM (an antihistamine), and Humibid (an expectorant)), added Ms. Forte to the list

to see the doctor on Monday, March 2, 2015, and returned Ms. Forte to her cell.

35.    The next morning, Sunday March 1, 2015, Ms. Forte submitted a sick call because her cough had gotten worse, and she was experiencing chest pains.

36.    Deputy D'Oyley responded to Ms. Forte's sick call and spoke with Ms. Forte. Ms. Forte asked to be taken to medical for her cough and chest pains.

37.    Deputy D'Oyley called medical and spoke with Nurse McGee, defendant here.  Deputy D'Oyley reported Ms. Forte's request and Nurse McGee told Deputy D'Oyley to bring Ms. Forte to medical.  Ms. Forte got dressed and ready to go to medical.

38.    Before Deputy D'Oyley brought Ms. Forte to medical, however, Nurse McGee called back and told Deputy D'Oyley not to bring Ms. Forte to medical.

39.    Nurse McGee reversed her decision to bring Ms. Forte to medical for evaluation because of a conversation with Nurse Safi, also defendant here.

40.    After the original call from Deputy D'Oyley, Nurse Safi told Nurse McGee about Ms. Forte's visit to medical the day before. Specifically, Nurse Safi told Nurse McGee that Ms. Forte had been seen the day before for

-12-

respiratory symptoms, she had been put on a cold protocol, and she had been put on the list to see the doctor on Monday.

41.    Nurse McGee instructed Deputy D'Oyley not to bring Ms. Forte to medical because Ms. Forte had been seen the day before.

42.    Nurse McGee made the decision to refuse Ms. Forte medical care without examining Ms. Forte.  Nurse McGee did not take Ms. Forte's temperature, measure her pulse, measure her blood pressure, or listen to her lungs with a stethoscope.  Nurse McGee did not even lay eyes on Ms. Forte, she simply rejected the request to be seen by medical.

43.    Nurse McGee's actions were taken in accordance with Defendant Corizon Health's policy to treat respiratory problems using a specific "cold protocol" instead of referring patients out for evaluation by a doctor or sending them to a hospital for emergency care.

44.    Defendant Corizon health's policy to have nurses treat all inmates complaining of respiratory problems using the "cold protocol" was created in order to increase profits for Defendant Corizon, despite the likelihood that it could cause the injury or death of persons in Defendant Corizon's care. According to Nurse McGee, Ms. Forte "was not sent down due to already being on protocol."

-13-

45.   After being told "don't bother" to take Ms. Forte to medical, Deputy D'Oyley told Ms. Forte to go back to her cell.

46.   Ms. Forte's last words before her death were, "So I'm going to see the doctor?" Deputy D'Oyley answered, "Yes."

47.   Due to the actions and failures of the Defendants herein, Ms. Forte never saw that doctor. About three hours after being denied the chance to even see a nurse, Ms. Forte was found dead in her cell.

48.   The autopsy performed in the follow-up investigation revealed that the cause of Ms. Forte's death was lobar pneumonia.

49.   In reviewing the medical records, Dr. Hashmi determined that Ms. Forte "should [have been] admitted to the Infirmary on 2/28/2015 when she was brought to the Infirmary for Cold Signs and symptoms with tachycardia HR 108 and Provider needs to see her ASAP."

### Count I
### State Law Professional Negligence
### (Nurse McGee, Nurse Shivers, and Nurse Safi)

50.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

51.   Nurses McGee, Shivers, and Safi were tasked with providing care, treatment and services to Ms. Forte at the Jail, and Nurses McGee, Shivers,

and Safi failed to provide that care, treatment and service as described herein.

52.   Nurses McGee, Shivers, and Safi owed a duty to Ms. Forte to exercise that degree of care and skill ordinarily exercised by health care providers generally and under like conditions and similar surrounding circumstances.

53.   Nurses McGee, Shivers, and Safi were negligent and deviated from the standard of care ordinarily exercised by health care providers generally and under like conditions and similar surrounding circumstances by failing to deliver a minimum level of nursing care to Ms. Forte on or about February 28, 2015, and March 1, 2015.

54.   Nurse McGee was negligent and deviated from the standard of care ordinarily exercised by health care providers generally and under like conditions and similar surrounding circumstances by refusing to treat Ms. Forte on March 1, 2015.

55.   Nurse Safi was negligent and deviated from the standard of care ordinarily exercised by health care providers generally and under like conditions and similar surrounding circumstances due to her role in Nurse McGee's decision to refuse to treat Ms. Forte on March 1, 2015.

56.    Nurse Safi informed Nurse McGee that Ms. Forte had been seen the day before, which prompted Nurse McGee to refuse to treat Ms. Forte.

57.    Nurse Safi was present and listening when Nurse McGee called Deputy D'Oyley to tell Deputy D'Oyley not to being Ms. Forte to medical.

58.    Nurse Safi therefore knew about Ms. Forte's symptoms the day before and the morning of Ms. Forte's medical request, she knew that Ms. Forte had requested to be seen in medical for her severe cough and chest pains, and she knew Nurse McGee was refusing to treat Ms. Forte, yet she did nothing to protest, intervene, or otherwise ensure Ms. Forte received treatment.

59.    Nurse Shivers examined Ms. Forte on February 28, 2015.  At that time, Ms. Forte had pneumonia, as was later determined in Ms. Forte's autopsy. Ms. Forte reported that she was shivering and had pain all over, she reported a severe cough, and she had a fever.

60.    Nurse Shivers was also aware of Ms. Forte's diagnosis of COPD, and that Ms. Forte had been taken to medical eight days previously because she was foaming at the mouth.

61.    Nurse Shivers also took Ms. Forte's pulse, and learned that Ms. Forte was showing tachycardia, with a heart rate of 108.

-16-

62.    Despite Ms. Forte's symptoms, Nurse Shivers's only treatment of Ms. Forte was to put Ms. Forte on a "cold protocol" and put her on the list to see a doctor two days later. Nurse Shivers breached the standard of care required of nursing staff when she failed to admit Ms. Forte to the infirmary or take other steps to ensure adequate monitoring of Ms. Forte, and instead sent Ms. Forte back to her cell on February 28, 2015.

63.    In reviewing the medical records, Dr. Hashmi determined that Ms. Forte "should [have been] admitted to the Infirmary on 2/28/2015 when she was brought to the Infirmary for Cold Signs and symptoms with tachycardia HR 108 and Provider needs to see her ASAP." This failure of Nurse Shivers breached the standard of care required of nursing staff.

64.    Nurses McGee, Shivers, and Safi breached the standard of care required of nursing staff when they failed to diagnose Ms. Forte with pneumonia on or before March 1, 2015.

65.    Nurses McGee, Shivers, and Safi breached the standard of care required of nursing staff in failing to provide treatment for Ms. Forte's pneumonia prior to her death.

66.    As a direct and proximate result of the acts and omissions of Nurses McGee, Shivers, and Safi which breached the standards of care required of

-17-

nursing staff, Ms. Forte sustained injury, pain and suffering, and ultimately death.

67. All of the acts and omissions of Nurses McGee, Shivers, and Safi described above constitute professional negligence as a result of which Plaintiff is entitled to recover from the Nurses McGee, Shivers, and Safi as set out below.

68. Because of time constraints, an affidavit of an expert as required by O.C.G.A. § 9-11-9.1 cannot be prepared before the expiration of the statute of limitations on March 1, 2017. Plaintiff retained undersigned counsel within 90 days prior to the expiration of the statute of limitations.

## Count II
## Respondeat Superior as to State Law Negligence Claims
## (Corizon Defendants)

69. The preceding paragraphs are incorporated herein by reference as though fully set forth.

70. All of Ms. Forte's injuries and damages were the direct result of the acts and omissions of the agents, servants and employees of the Corizon Defendants, and were conducted within the course and scope of each individual's employment with Corizon Defendants' healthcare providers.

71.   Nurses McGee, Safi and Shivers, and Dr. Hashmi, were acting within the scope of their employment with Corizon Defendants at all times material hereto.

72.   Nurse McGee was acting within the scope of her employment with Corizon Defendants when she refused Ms. Forte medical treatment.

73.   Nurse Safi was acting within the scope of her employment with Corizon Defendants when she knew about Ms. Forte's symptoms the day before and the morning of Ms. Forte's medical request, she knew that Ms. Forte had requested to be seen in medical for her severe cough and chest pains, and she knew Nurse McGee was refusing to treat Ms. Forte, yet she allowed Nurse McGee to refuse Ms. Forte medical treatment.

74.   Nurse Shivers was acting within the scope of her employment with Corizon Defendants when she examined Ms. Forte on February 28, 2015, and only treated Ms. Forte by putting her on a "cold protocol" and putting her on the list to see a doctor two days later, despite her symptoms and her pneumonia.

75.   Dr. Hashmi was acting within the scope of his employment with Corizon Defendants when he was working as the Health Services Administrator in a supervisory capacity over the medical department of the Gwinnett County

Detention Center. Dr. Hashmi was acting within the scope of his employment with Corizon Defendants when overseeing the policies including the NETs Guide (discussed below), which worked to deprive inmates with pneumonia from being adequately treated for pneumonia, as is described herein.

76.    Nurses McGee, Safi, and Shivers, and Dr. Hashmi, were under the Corizon Defendants' direct supervision, employ, and control when they made the decisions described herein. Nurses McGee, Safi, and Shivers, and Dr. Hashmi, engaged in this conduct while acting within the course and scope of their employment with Corizon Defendants in that this conduct occurred while Nurses McGee, Safi, and Shivers, and Dr. Hashmi, were acting in furtherance of Corizon Defendants.

77.    Ms. Forte died as a result of the negligence of Nurses McGee, Safi, and Shivers, and the supervisory actions of Dr. Hashmi.

78.    Corizon Defendants are therefore vicariously liable for the individual employees' and agents' acts and omissions (including without limitation Nurses McGee, Safi, and Shivers, and Dr. Hashmi's, acts and omissions described herein), and for each individual officer, director, employee, agent and servant's negligent acts and omissions, and the resultant injuries and

-20-

damages of Ms. Forte by application of the doctrine of respondeat superior.

Plaintiffs are therefore entitled to recover damages from Corizon
Defendants.

## Count III
### Section 1983 Deliberate Indifference
### (Nurses McGee and Safi)

79.  The preceding paragraphs are incorporated herein by reference as
though fully set forth.

80.  Nurse McGee was deliberately indifferent to Ms. Forte's serious
medical needs and therefore violated her rights under the Fourteenth
Amendment to the U.S. Constitution.

81.  Nurse McGee knew that Ms. Forte was in serious need of medical care
when she refused to evaluate or otherwise obtain medical treatment for
Ms. Forte.

82.  Prior to refusing to evaluate Ms. Forte Nurse McGee was generally
aware of Ms. Forte's medical history and her diagnosis of COPD.

83.  Prior to making the decision to not evaluate Ms. Forte, Nurse McGee
was told about Ms. Forte's condition by Deputy D'Oyley, and gained
information about Ms. Forte's medical history from Nurse Shivers, Nurse

Safi, and Ms. Forte's written medical history.  Nurse McGee was told by

Deputy D'Oyley that Ms. Forte had asked to be seen in medical.

84.    Nurse McGee was told by Deputy D'Oyley that Ms. Forte asked to be

seen in medical for her cough and chest pains.

85.    Deputy D'Oyley further told Nurse McGee that "stuff was coming out of

her chest."

86.    Nurse McGee was told further that Ms. Forte had presented the day

before with a bad cough, fever, shivering, and night sweats.  Nurse McGee,

however, instructed Deputy D'Oyley that Ms. Forte was not to be brought

to medical.

87.    Nurse McGee told Deputy D'Oyley, "Don't bother, she has been seen,

and is going to see the doctor."

88.    It was the deliberate indifference of the Nurse McGee in refusing to

even allow Ms. Forte to be seen by the medical department that caused

Ms. Forte's death.

89.    Nurse Safi was deliberately indifferent to Ms. Forte's serious medical

needs and therefore violated her rights under the Fourteenth Amendment

to the U.S. Constitution.

-22-

90.   Nurse Safi knew that Ms. Forte was in serious need of medical care when she cooperated in Nurse McGee's decision to refuse to evaluate or otherwise obtain medical treatment for Ms. Forte.

91.   Prior to the refusal to evaluate Ms. Forte, Nurse Safi was generally aware of Ms. Forte's medical history and her diagnosis of COPD.

92.   Prior to the refusal to evaluate Ms. Forte, Nurse Safi was told about Ms. Forte's current condition by Nurse McGee, and gained information about Ms. Forte's medical history from Nurse Shivers and Ms. Forte's written medical history.  Nurse Shivers was told by Nurse McGee that Ms. Forte had asked to be seen in medical.

93.   Nurse Safi was told by Nurse McGee that Ms. Forte asked to be seen in medical for her cough and chest pains.

94.   Nurse Safi was aware that Ms. Forte had reported "stuff was coming out of her chest."

95.   Nurse Safi was told further that Ms. Forte had presented the day before with a bad cough, fever, shivering, and night sweats.  Nurse Safi, however, cooperated with Nurse McGee in determining that Ms. Forte was not to be brought to medical.

-23-

96.   It was the deliberate indifference of Nurse Safi in joining with Nurse

McGee in refusing to even allow Ms. Forte to be seen by the medical

department that caused Ms. Forte's death.

### Count IV
### Section 1983 Supervisory Liability
### (Sheriff Conway, Col. Pinkard, Dr. Hashmi, Corizon Defendants)

97.   The preceding paragraphs are incorporated herein by reference as

though fully set forth.

98.   At all times relevant herein, Col. Pinkard was the Jail Commander at

the Gwinnett County Detention Center.  As Jail Commander at the

Gwinnett County Jail, Col. Pinkard had a supervisory role over the

Gwinnett County Jail.

99.   At all times relevant herein, Dr. Hashmi was the Health Services

Administrator at the Gwinnett County Detention Center.  As Health

Services Administrator at the Gwinnett County Jail, HSA had a

supervisory role over medical personnel working at the Gwinnett County

Jail.

100.  At all times relevant herein, Corizon Defendants were the private

medical provider for the Gwinnett County Detention Center, per

agreement with Gwinnett County and/or Sheriff Conway.  As private

-24-

medical provider for the Gwinnett County Detention Center, Corizon Defendants had a supervisory role over medical personnel working at the Gwinnett County Jail and had the capacity to establish policy for the medical personnel working at the Gwinnett County Jail.

101.  In their supervisory capacities, the actions of Sheriff Conway, Col. Pinkard, Dr. Hashmi, and Corizon Defendants (hereinafter "Supervisory Defendants") were casually connected to the deliberate indifference to Ms. Forte's serious medical needs and Ms. Forte's deprivation of medical care, which caused her death.

102.  In February and March of 2015, Supervisory Defendants were aware of the Corizon Nursing Encounter Tools Symptom and Intervention Guide ("NETs Guide"), which sets out the treatment nurses are to give inmates depending on the symptoms presented by the inmates.

103.  In February and March of 2015, Supervisory Defendants were aware that the NETs Guide provides that an inmate whose primary symptoms include "ears, nose and throat, common cold, cough" were to be designated as presenting "Upper Respiratory" issues and were to be given only the following treatment: "Tylenol 650mg po twice daily PRN pain x 3 days;

-25-

Lortadine 10mg po once daily PRN coryza x 3 days; Guaifenisin 400mg po twice daily PRN cough x 3 days."

104. As a result of the NETs Guide, an inmate presenting any respiratory symptoms, including pneumonia symptoms, to a nurse in the medical area would only be given Tylenol, Lortadine, and Guaifenesin. The inmate would not be adequately treated for pneumonia.

105. In February and March of 2015, Supervisory Defendants were aware that, as a result of the NETs Guide, an inmate presenting any respiratory symptoms, including pneumonia symptoms, to a nurse in the medical area would only be given Tylenol, Lortadine, and Guaifenesin. The inmate would not be adequately treated for pneumonia.

106. In February and March of 2015, Supervisory Defendants were aware that pneumonia is a serious medical need, and the failure to treat an inmate who is suffering from pneumonia could lead to serious injury or death.

107. In February and March of 2015, knowing that the failure to have an inmate who is suffering from pneumonia examined by a competent nurse or a doctor and failing to treat an inmate's pneumonia, or simply giving that inmate Tylenol, Lortadine, and Guaifenesin, could lead to serious

injury or death, Supervisory Defendants ordered and authorized their

subordinates to follow the NETs Guide, which would prevent an inmate

with pneumonia from being given treatment for pneumonia.

108.  Supervisory Defendants adopted the policy to follow the NETs Guide,

rather than provide adequate pneumonia treatment or send inmates to

outside medical providers for emergency care, in order to increase profits

for Corizon Defendants.

109.  Supervisory Defendants chose to protect the profits of Corizon

Defendants rather than preserve Ms. Forte's life.

110.  Supervisory Defendants are therefore liable for their supervisory roles

in the deliberate indifference to Ms. Forte's serious medical needs and Ms.

Forte's deprivation of medical care, which caused her death.

### Count V
### Section 1983 Monell Liability
### (Corizon Defendants; Sheriff Conway, Col. Pinkard, and Dr. Hashmi in their official capacities)

111.  The preceding paragraphs are incorporated herein by reference as

though fully set forth.

112.  At all times relevant herein, Corizon Defendants were responsible for

providing medical care to inmates at the Gwinnett County Detention

center as a result of a contract with Gwinnett County and/or Sheriff
Conway.

113.  Pursuant to a contract to provide medical care at the Gwinnett County
Detention Center, Corizon Defendants had a supervisory role over medical
care providers working at the Gwinnett County Detention Center.

114.  Further, Corizon Defendants had authority to hire, train, and fire
medical care providers at the Gwinnett County Detention Center as well
as authority to set, modify, and enforce policy applicable to medical care
providers.

115.  At all times relevant herein, Sheriff Conway was the Sheriff of
Gwinnett County.  As Sheriff of Gwinnett County, Sheriff Conway had a
supervisory role over the Gwinnett County Detention Center. As Sheriff of
Gwinnett County, Sheriff Conway had authority to hire, train, and fire
detention personnel at the Gwinnett County Detention Center as well as
authority to set, modify, and enforce policy applicable to detention
personnel and medical care providers.

116.  At all times relevant herein, Col. Pinkard was the Jail Commander of
the Gwinnett County Detention Center.  As such, Col. Pinkard had a
supervisory role over the Gwinnett County Detention Center. As Jail

-28-

Commander, Col. Pinkard had authority to hire, train, and fire detention
personnel at the Gwinnett County Detention Center as well as authority
to set, modify, and enforce policy applicable to detention personnel and
medical care providers.

117.   At all times relevant herein, Dr. Hashmi was the Health Services
Administrator at the Gwinnett County Detention Center.  As such, Dr.
Hashmi had a supervisory role at the Gwinnett County Detention Center.
As Health Services Administrator, Dr. Hashmi had authority to hire,
train, and fire medical personnel at the Gwinnett County Detention
Center as well as authority to set, modify, and enforce policy applicable to
medical care providers.

118.   There is an officially promulgated policy at the Gwinnett County
Detention Center requiring that nursing staff follow the Corizon Nursing
Encounter Tools Symptom and Intervention Guide ("NETs Guide"), which
sets out the treatment nurses are to give inmates depending on the
symptoms presented by the inmates.

119.   The NETs Guide provides that an inmate whose primary symptoms
include "ears, nose and throat, common cold, cough" were to be designated
as presenting "Upper Respiratory" issues and were to be given only the

following treatment, designated a "cold protocol:" "Tylenol 650mg po twice daily PRN pain x 3 days; Lortadine 10mg po once daily PRN coryza x 3 days; Guaifenisin 400mg po twice daily PRN cough x 3 days."

120. As a result of the NETs Guide, an inmate presenting any respiratory symptoms, including pneumonia symptoms, to a nurse in the medical area would only be given Tylenol, Lortadine, and Guaifenesin. The inmate would not be treated for pneumonia.

121. The NETs Guide is unconstitutional in that it prevents an inmate who presents to medical staff with symptoms of pneumonia from being treated for pneumonia, from being evaluated by a doctor, and from being transported to an outside facility for emergency care

122. Corizon Defendants, Sheriff Conway, Col. Pinkard, and Dr. Hashmi, in their official capacities, are responsible for the officially promulgated NETs Guide policy and are therefore responsible for the deliberate indifference to Ms. Forte's constitutional rights and, ultimately, her death.

123. As final decision-makers with regard to medical treatment at the Gwinnett County Jail, Corizon Defendants, Sheriff Conway, Col. Pinkard, and Dr. Hashmi are responsible for the NETs Guide policy and are

-30-

therefore responsible for the deliberate indifference to Ms. Forte's constitutional rights and, ultimately, her death.

124. It was the policy and/or custom of Corizon Defendants, Sheriff Conway, Col. Pinkard, and Dr. Hashmi to inadequately supervise, train, discipline, and retain its employees, including Nurses McGee, Safi, and Shivers, thereby failing to adequately discourage further constitutional violations on the part of its employees.

125. Corizon Defendants, Sheriff Conway, Col. Pinkard, and Dr. Hashmi did not require training dealing with the appropriate manner of providing medical care to inmates and, in particular, (1) when a nurse may and may not refuse to see an inmate who is requesting medical care, (2) when a nurse should call a doctor to examine an inmate exhibiting emergency symptoms such as symptoms of pneumonia.

126. Corizon Defendants, Sheriff Conway, Col. Pinkard, and Dr. Hashmi did not provide adequate supervision to nurses regarding the appropriate manner of providing medical care to inmates and, in particular, (1) when a nurse may and may not refuse to see an inmate who is requesting medical care, (2) when a nurse should call a doctor to examine an inmate exhibiting emergency symptoms such as symptoms of pneumonia.

127.  Corizon Defendants, Sheriff Conway, Col. Pinkard, and Dr. Hashmi did
      not adequately discipline and improperly retained nurses who would
      predictably provide inadequate medical care to inmates by, for example,
      refusing an inmate who requests medical care or failing to call a doctor to
      examine a patient who demonstrates emergency symptoms of pneumonia.

128.  Corizon Defendants, Sheriff Conway, Col. Pinkard, and Dr. Hashmi
      failure to adequately supervise, train, discipline, and retain jail personnel,
      including Nurses McGee, Safi, and Shivers, demonstrating a reckless or
      callous indifference to the rights of the inmates at the Gwinnett County
      Detention Center.

### Count VI
### Estate's Tort Claims

129.  The preceding paragraphs are incorporated herein by reference as
      though fully set forth.

130.  Plaintiff Ashleigh Forte is the Administrator of the Estate of Ms. Forte,
      and she prosecutes these claims in that capacity.

131.  Ms. Forte sustained grievous injuries, pain, and suffering as a direct
      result of Defendants' acts and omissions, which constitute violations of
      federal and state law, deliberate indifference, and negligent performance
      of ministerial duties.

132.   In her capacity as the Personal Representative of Ms. Forte's estate, Plaintiff is entitled to recover all damages to which Ms. Forte would have been entitled had she survived. As a result of Defendants' wrongful conduct, Ms. Forte incurred medical, funeral and related expenses for her therapy, treatment, and services. Ms. Forte also endured extreme pain and suffering as a result of Defendants' acts and omissions while she was an inmate at the Gwinnett County Detention Center.

133.   Based on the foregoing, Plaintiff, as Administrator of Ms. Forte's estate, is entitled to recover damages equal to all expenses incurred in the provision of medical treatment to Ms. Forte resulting from Defendants' wrongful conduct, and funeral expenses. Plaintiff is also entitled to recover for Ms. Forte's conscious pain and suffering.

### Count VII
### Wrongful Death

134.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

135.   Plaintiff is Ms. Forte's daughter and as such holds statutory rights under O.C.G.A. § 51-4-2 to pursue a wrongful death action regarding Ms. Forte's death; she pursues a wrongful death claim here in that capacity.

-33-

136.  Ms. Forte sustained grievous injuries, pain, and suffering, and
      ultimately death, as a direct result of Defendants' acts and omissions,
      which constitute violations of federal and state law, deliberate
      indifference, negligence, and negligent performance of ministerial duties.

137.  In her individual capacity as Ms. Forte's daughter, Plaintiff is entitled
      to recover the full value of Ms. Forte's life and extreme pain and suffering
      as a result of Defendants' acts and omissions while she was an inmate at
      the Gwinnett County Detention Center.

## Prayer For Relief

WHEREFORE, Plaintiff prays that this Court issue the following relief:

a.  That process and summons issue in accordance with the law;

b.  That the Court award Plaintiff compensatory and general damages
    in an amount of not less than the full value of Ms. Forte's life as
    to be determined by the jury against all Defendants, jointly and
    severally;

c.  That the Court award Plaintiff compensatory and general damages
    in an amount of not less than the entirety of Ms. Forte's physical,
    mental and emotional pain, suffering and trauma as to be
    determined by the jury against Defendants, jointly and severally;

d. Pursuant to O.C.G.A. § 9-11-8, Plaintiff demands judgment in excess of $10,000.00;

e. That the Court award Plaintiff punitive damages in an amount as to be determined by the enlightened conscience of the jury against all Defendants, jointly and severally;

f. That the Court award costs of this action, including attorneys' fees, to Plaintiff, pursuant to U.S.C. § 1988, the laws of the State of Georgia and other applicable laws regarding such awards against Defendants, jointly and severally;

g. That pre and post judgment interest be awarded to Plaintiff under federal and state statutes and case law;

h. That the Court award Plaintiff such other and further relief as it deems just and necessary; and

i. That Plaintiff be granted a trial by jury.

This 1st Day of March, 2017

HORSLEY BEGNAUD, LLC

Mark Begnaud
Georgia Bar No. 217641
mbegnaud@gacivilrights.com
Nathanael A. Horsley
Georgia Bar No. 367832

-35-

nhorsley@gacivilrights.com

750 Hammond Drive,
Building 12, Suite 300
Atlanta, Ga 30328
770-765-5559

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ASHLEIGH FORTE, individually and as ADMINISTRATOR OF THE ESTATE OF DENISE GERTRUDE FORTE | |
| Plaintiff, | Civil Action File No._____ |
| v. | |
| CORIZON HEALTH, INC., a Tennessee Corporation, et al., | Jury Trial Demand |
| Defendants. | |

### VERIFICATION

Personally appeared before the undersigned officer, ASHLEIGH FORTE, who, after first being duly sworn deposes and states that the information supplied in the foregoing COMPLAINT is true and correct to the best of her knowledge. However, it is not based solely on the knowledge of the executing party, but includes information obtained by and through her agents, representatives and attorneys. The word usage and sentence structure may be that of the attorney and does not necessarily purport to be the precise language of the executing party.

This 28th day of February, 2017.

_____
ASHLEIGH FORTE

Sworn to and subscribed before
me this 28th day of February, 2017.

Notary Public
My Commission Expires: 10/31/2019



FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA.

2017 MAR -1 PH 4: 13

RICHARD ALEXANDER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| ASHLEIGH FORTE, individually and as ADMINISTRATOR OF THE ESTATE OF DENISE GERTRUDE FORTE | 17 C 01165-3<br>17 C 01165-3 |
| Plaintiff, | Civil Action File No._____ |
| v. | Jury Trial Demand |
| CORIZON HEALTH, INC., a Tennessee Corporation, et al., | |
| Defendants. | |

## DECLARATION OF MARK BEGNAUD UNDER PENALTY OF PERJURY

1. My name is Mark Begnaud.  I am over eighteen (18) years of age and suffer no legal disabilities.  I give this declaration based on my own personal knowledge.

2. I am the attorney of record for Plaintiff in the above-styled case.

3. Based on the medical records provided by Defendants, Ms. Denise Gertrude Forte passed away on March 1, 2015.

4. I therefore believe that some or all of Plaintiff's claims will be barred by the statute of limitations after March 1, 2017.

5. Because of time constraints, an affidavit of an expert cannot be prepared before the expiration of the statute of limitations.

6. My law firm was retained by Plaintiff less than 90 days prior to the expiration of the statute of limitations.

7. I declare under penalty of perjury under the laws of the State of Georgia and the United States of America that the foregoing is true and correct.

Executed on March 1, 2017.

Mark Begnaud

Expires on September 27, 2020

34-17